IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREEN DESERT OIL GROUP,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BP WEST COAST PRODUCTS,<br><br>　　　　Defendant.　　　　　　／ | No. C 11-02087 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

On Friday, February 17, 2012, the Court heard argument on two motions in this putative class action brought by BP franchisees ("Plaintiffs") against BP ("Defendant"). The first was a motion by Defendant to prohibit Plaintiffs from making misleading statements to class members and requiring them to issue a corrective notice about an allegedly misleading statement. Mot. for Corrective Action (dkt. 75). The second was a motion by Defendant to dismiss the Second Amended Complaint ("SAC"). MTD (dkt. 74). The Court denied the Motion for Corrective Action from the bench, and this Order will not address it further.[1] As described below, the Court GRANTS the Motion to Dismiss.

I.  **BACKGROUND**

The parties are familiar with the facts of this case and the Court will not repeat them here. In short, Plaintiffs allege that Defendant has breached various agreements by forcing

---

[1] Defendant may renew the motion, and Plaintiffs may bring such a motion, in the future if necessary.

Plaintiffs to buy and use a defective computer system called Retalix, and that Defendant has engaged in additional wrongdoing unrelated to Retalix.

On October 11, 2011, the Court held a hearing on three motions: (1) Plaintiffs' Motion for a Preliminary Injunction relating to Defendant's communications with class members about proposed settlement terms; (2) Defendant's Motion to Dismiss the First Amended Complaint ("FAC") based on failure to state a claim; and (3) then-Defendant Retalix's Motion to Dismiss the FAC as to it, based largely on Retalix's argument that Plaintiffs are not third party beneficiaries of Retalix's contract with Defendant. At the motion hearing, the Court denied Plaintiffs' Motion for Preliminary Injunction but separately instructed Defendant to coordinate with Plaintiffs regarding any new settlement communications with BP franchisees. See Minutes (dkt. 57) ("BP to coordinate with plaintiff regarding any new settlement communications with franchisees.").[2] The Court granted Defendant's Motion to Dismiss in part, but found that Plaintiffs had stated a claim as to three claims unrelated to the Retalix computer system.[3] See Minutes ("BP granted in part with leave to amend"); Lee Decl. (dkt. 78-1) Ex. A (Oct. 11, 2011 Hearing Transcript) at 22-35 (Court's discussion of three surviving claims). Following supplemental briefing, the Court granted Retalix's Motion to Dismiss with prejudice. See Order (dkt. 64).

Plaintiffs timely filed their SAC. See SAC (dkt. 67). Defendants have now filed a Motion to Dismiss the SAC, arguing that it still fails to state a claim. See generally MTD. The Court largely agrees.

**II. LEGAL STANDARD**

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded

---

[2] To be clear, the Court never held that Defendant was barred from discussing with franchisees the issues relating to this lawsuit; the Court's instruction only pertained to new settlement communications with franchisees.

[3] These are: (1) the allegations relating to BP's manipulation of the gas supply; (2) the allegations that BP required that franchisees purchase certain supplies from third party vendors and fail to approve reasonable alternative suppliers presented to BP for approval; and (3) the allegations that BP refuses to treat customers' $0.45 debit transaction fee as a gross sale.

2

allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

Defendant moves to dismiss all of the claims in the SAC except for those the Court previously let stand. See MTD at 1. The claims at issue include (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of California's Unfair Competition Law ("UCL"); and (4) accounting.[4] This Order will address each in turn.

### A. Breach of Contract

Defendant moves to dismiss the breach of contract claim. See MTD at 4-7. Importantly, although the SAC lists a significant number of alleged breaches of contract, see SAC ¶¶ 38-86, and Defendant moves to dismiss all of them, see MTD at 4-7, Plaintiffs only defend three of the alleged breaches in their Opposition: (1) breach as to the Retalix system; (2) breach as to Defendant's exercise of its right of first refusal; and (3) breach as to Defendant's alleged failure to deliver ARCO-branded fuel, see Opp'n at 10-13. Defendant correctly asserts that Plaintiffs have abandoned their other breach of contract claims. See Reply (dkt. 83) at 2 (citing Qureshi v. Countrywide Home Loans, Inc., No. 09-4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar., 10. 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims") (citing Jenkins v. City of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)). The abandoned claims are dismissed without leave to amend. This Order will address only the three remaining bases for Plaintiffs' breach of contract claim.

//

---

[4] The SAC also included a claim for negligence, but, in response to Defendant's arguments, Plaintiffs have agreed to dismiss that claim. See Opp'n (dkt. 78) at 13 n.9.

3

### 1. Breach as to Retalix

The allegations relating to the allegedly flawed computer system, Retalix, are at the center of this case: Plaintiffs allege that Defendant forced them to purchase a materially defective computer system, then failed to fix it, resulting in substantial damages to Plaintiffs. See SAC ¶¶ 44-47. The SAC alleges that "Plaintiffs and other franchisees informed the BP Defendants and Retalix on numerous occasions of the problems they were experiencing with the Retalix POS system" but, despite "promises by BP Defendants and Retalix to support, maintain, and fix these defects and their continued unsuccessful and futile attempts to fix the defects, the material defects still exist and have not been corrected and continue to cause Plaintiffs significant damages." Id. ¶¶ 55-56. The Court dismissed this claim in the FAC, holding that Plaintiffs failed to "point to the provisions in the contract which the plaintiff alleges were violated and constitute a breach of contract." Lee Decl. Ex. A (Hearing Transcript) at 22:20-22. The Court asked whether, "if I give you leave to amend, . . . whether [Plaintiffs] would be able to be far more specific, pointing to provisions of the contract that [they] allege were actually breached." Id. at 23:1-4. Plaintiffs assured the Court that they could, and the Court gave them leave to amend. See Minutes.

The SAC now does cite extensively to various contracts, see SAC ¶¶ 48-52, but, as Defendant points out, it is difficult to deduce what language Plaintiffs rely on, see MTD at 5. In their Opposition, Plaintiffs explain that they rely on the ampm Site System Retalix Hardware Maintenance Service Agreement (SAC Ex. E), which they say Defendant violated "by failing to fix the problems with the Retalix system." Opp'n at 10-11. Plaintiffs note that in that agreement, Defendant agrees "to provide hardware maintenance services . . . for the ampm site system (Retalix) and for the Facility," and Attachment A to that agreement states that BP and its agent, IBM, will "resolve" or "fix" the technical problems by making "service calls" either by phone or on site depending on the "severity" of the problems." Id. at 11

4

(citing SAC Ex. E Attachment A).[5] Plaintiffs further note that the SAC alleges that BP failed to successfully fix the various major defects in the Retalix system, and thus argue that they have stated a claim. Opp'n at 11.

Plaintiffs have not stated a claim. Although the ampm Site System Retalix Hardware Maintenance Service Agreement (SAC Ex. E) and Attachment A set out the means by which Defendant is to attempt to resolve technical problems with Retalix, it does not promise that Defendant will resolve such problems. This case is therefore distinguishable from RRX Industries, Inc. v. Lab-Con, Inc., 772 F.2d 543, 545-46 (9th Cir. 1985), where the contract obligated defendant "to correct any malfunctions or 'bugs' that arose in the system" and defendant "failed to correct adequately programming errors." Attachment A even states:

> [DEFENDANT] MAKES NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY REGARDING IBM OR [DEFENDANT] MEETING THE TIME FRAMES (FIX TARGETS) LISTED ABOVE.

SAC Ex. E Attachment A. The SAC does not allege that Defendant did not attempt to resolve problems with Retalix; it alleges that Defendant did not do so successfully. See SAC ¶ 56 (alleging that Defendant made "continued unsuccessful and futile attempts to fix the defects," but that "material defects still exist"). Unsuccessful attempts to fix Retalix do not breach the ampm Site System Retalix Hardware Maintenance Service Agreement, and so the Retalix breach of contract claim is dismissed. In light of Plaintiffs' previous opportunity to amend (and the Court's explicit instructions on how to do so), and their narrow defense of this claim in their Opposition, the Court will not permit Plaintiffs to amend further.

The Court notes that Plaintiffs have asked for leave to amend the SAC to add allegations supporting a claim for breach of the implied warranty of fitness, a claim that at least one other court found had merit. See Opp'n at 12 (citing Tan Decl. Ex. A (Transcript of

---

[5] Defendant guessed, it its Motion, that Plaintiffs would rely on the ampm Agreement quoted in the SAC, which provided that "BP shall provide limited maintenance and support services for the POS System and Computer System software and hardware." MTD at 5 (citing SAC ¶ 48). Plaintiffs' Opposition does not rely on that language, but, even if it did, there is no allegation in the SAC that BP failed to provide "limited maintenance and support," and so such language does not provide a viable basis for a breach of contract claim.

5

1  1/5/12 hearing in <u>Hogan et al. v. BP et al.</u>, Los Angeles Superior Court Case No. 469574)
2  (holding that plaintiffs failed to cite to any contractual provision regarding the minimum
3  requirements of the Retalix system, but that the complaint there adequately alleged a
4  violation for the implied warranty of fitness for a particular purpose).  Although it is late in
5  the day, the Court will permit Plaintiffs to amend in order to add this claim.[6]

### 2. Breach as to Right of First Refusal

The allegations regarding Defendant's right of first refusal are as follows.  The ampm Mini Market Agreement (SAC Ex. B § 17.01) and Contract Dealer Gasoline Agreement (SAC Ex. A § 18.01) only give Defendant a right of first refusal to purchase a franchisee's interest where a franchisee wants to sell or transfer its interests in these contracts.  SAC ¶ 75.  Despite that limitation, BP requires any prospective buyer's lender to grant BP a right of first refusal to assume the loan in the event of default, lowering the market value of the franchises because the Small Business Administration will not accept that restriction.  <u>Id.</u> ¶ 74.

The Court previously dismissed this allegation because the FAC did not cite to any contractual provision that the conduct violated.  <u>See</u> FAC (dkt. 20) ¶ 67.  Although the SAC now cites to two contracts regarding a right of first refusal, it still does not point to any language in those contracts that Defendant's conduct breached.  Those contracts limit Plaintiffs' ability to sell their franchises; they do not limit Defendant's ability to demand a right of first refusal in other contexts.  Moreover, as Defendant notes in its Reply, the contracts explicitly recognize that BP has a right to prevent foreclosure sales of franchises.  <u>See</u> Reply at 4 (citing SAC Ex. A § 18.1 (franchisees may not allow foreclosing lender to complete a sale without offering BP a right of first refusal)).  Given such language, the Court finds that Plaintiffs have failed to state a claim, and dismisses the right of first refusal claim.  Again, the Court will not permit Plaintiffs to amend further.

//
//

---

[6] Defendant noted at the motion hearing that it did not object to allowing Plaintiffs to add such a claim.

6

### 3. Breach as to ARCO-Branded Fuel

The SAC includes a new breach of contract theory: that Defendant "does not deliver ARCO branded fuel, but instead delivers generic fuel that it purchases from other refineries," while still charging Plaintiffs higher prices for ARCO fuel, in breach of the Dealer Gasoline Agreement. SAC ¶ 81 (citing Contract Dealer Gasoline Agreement, SAC Ex. A). Plaintiffs are presumably referring to the Recitals section of that Agreement, which states that "[Defendant] markets motor fuels comprising gasolines and gasoline containing materials bearing the ARCO® trademark and other identifying symbols." SAC Ex. A at 1 of 14.

Defendant moves to dismiss this alleged breach, arguing that, "[r]egardless of the source, gasoline delivered by BP to franchisees is, by definition, ARCO-brand gasoline, because it has been approved and delivered by BP, the owner of the ARCO brand." MTD at 7. Defendant relies on Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 478 F. Supp. 243, 279-80 (E.D. Pa. 1979), which held that "just what constitutes Texaco branded gasoline is a matter for Texaco in its discretion to determine" and that "Texaco had the right to put its trademark on whatever gasoline it deemed suitable." Based on Edward J Sweeney & Sons, Inc., Defendant argues that "it has long been standard practice in the gasoline industry for branded suppliers to buy gasoline from other refineries." Reply at 5.

Defendant might be right, but it did not cite to a Ninth Circuit case that holds that generic gasoline sold by BP is the same thing as "gasoline containing materials bearing the ARCO® trademark and other identifying symbols," see SAC Ex. A at 1 of 14, and the Court will not dismiss this claim based on an Eastern District of Pennsylvania case. Accordingly, the Court will let the claim survive; Plaintiffs may add more detail to the claim if and when they amend.

### B. Breach of the Implied Covenant of Good Faith

Defendant also moves to dismiss the SAC's claim for breach of the implied covenant of good faith and fair dealing, arguing that it is "identical to the implied covenant claim in the FAC, and fails for the same reasons the Court previously dismissed that claim." See MTD at 8 (citing Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc., No. 06-2584, 2008

7

WL 111223, at *12 (N.D. Cal. June 9, 2008) (breach of implied covenant claim superfluous where it "merely alleges that the covenant of good faith was breached when the express terms of the contract were breached")).

Plaintiffs offer up a very lengthy defense of their implied covenant claim, reminding the Court that "a claim for the breach of implied covenant of good faith and fair dealing exists <u>independently</u> of whether a plaintiff could also assert a claim for breach of contract." Opp'n at 2 (citing <u>Black & Veatch v. Modesto Irr. Dist.</u>, No. 11-695, 2011 WL 2636218, at *6 (E.D. Cal. July 5, 2011)). Plaintiffs insist that their implied covenant claim is distinct from their breach of contract claim:

> the breach of contract claim is based on breach of express provisions of the contract requiring BP to adequately fix the Retalix problems. In contrast, the implied covenant claim is based on the fact that BP has engaged in a bad faith course of conduct (*e.g.*, selling to franchisees a system that BP knew did not work, and denying that there was no [sic] problem with the system despite overwhelming evidence that it knew that such denial was false).

Opp'n at 11.

Not so. Despite the extensive theories outlined in the Opposition, <u>see</u> Opp'n at 4-10, the SAC (like the FAC before it) simply alleges that the "franchise agreements contained an implied covenant of good faith and fair dealing," and that "[a]s a result of BP Defendants' conduct stated above, the BP Defendants have breached the implied covenant." SAC ¶¶ 88, 78; <u>see also</u> FAC ¶¶ 77-78 (same allegations, verbatim).

As the Court held as to the FAC, when an implied covenant claim is merely duplicative of the contract claim, it is subject to dismissal. <u>See</u> Lee Decl. Ex. A. (Hearing Transcript) at 34 ("THE COURT: . . . the implied covenant of good faith and fair dealing rises and falls on the contract claim."); <u>Gabana Gulf Distrib., Ltd.</u>, 2008 WL 111223, at *12; <u>see also</u> <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 327 (2000) ("where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous"). The implied covenant claim here is duplicative and therefore is dismissed. If Plaintiffs can amend in good faith based on the theories outlined in their Opposition, they may do so.

8

### C.  UCL

Additionally, Defendants move to dismiss the UCL claim, noting that it is "identical to the UCL claim in the previous complaint" and "fails for the same reasons the Court previously dismissed this claim." MTD at 9 (comparing SAC ¶¶ 98-103 with FAC ¶¶ 93-98). As with the FAC's UCL claim, the SAC alleges first that "Plaintiffs are informed and believe, and based thereon allege that Defendants, and each of them have engaged in a pattern of behavior and/or a course of conduct of unfair and/or fraudulent business practices against Plaintiffs within the meaning of . . . § 17200 et seq." SAC ¶ 100. It actually repeats that same paragraph twice. Compare id. with id. ¶99. The SAC next alleges that "Defendants, and each of them, negligently or knowingly and fraudulently misrepresented the (i) the [sic] efficacy of the Retalix system; (ii) the profitability of the franchises as a result of the various breaches alleged above; (iii) failure by the BP Defendants to spend all advertising and promotion fees." Id. ¶ 101. And it alleges that the Defendants' actions caused Plaintiffs actual injury, entitling them to damages. Id. ¶¶ 102-103.

The UCL claim thus fails to identify any particular unfair or fraudulent business practice other than three misrepresentations. See id. ¶101. Accordingly, it is grounded in fraud. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (describing misrepresentation as component of fraud claim). Because it is grounded in fraud, it must be pled with particularity under Federal Rule of Civil Procedure 9(b). Id. at 1127. Rule 9(b) "requires an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). The SAC provides none of these specifics as to the misrepresentations at issue. Moreover, the Court told the Plaintiffs this at the last hearing. See Lee Decl. Ex. A (Hearing Transcript) at 35:3-5 ("THE COURT: . . . as to the unfair competition clause, you have to allege with particularity, since it has to be based upon a fraudulent misrepresentation").

Plaintiffs argue that the SAC states a claim for an unfair – and not only a fraudulent– business practice, see Opp'n at 13-14 (citing In re Facebook PPC Adver. Litig., No. 09-3043,

9

1  09-3519, 09-3430, 2010 WL 3341062, at *11 (N.D. Cal. Aug. 25, 2010) ("a systematic
2  breach of contract may be an unfair business practice")), and indeed Plaintiffs made this
3  same argument at the last hearing, see Lee Decl. Ex. A (Hearing Transcript) at 35:11 ("MR.
4  LEE: . . . if there's a systematic breach of contract, that could rise to the level of – THE
5  COURT: I don't see it quiet yet.  And let's see what your amended complaint looks like."),
6  but the SAC does not include any plausible allegations, in the UCL claim section or
7  elsewhere, of a systematic breach of contract.

Accordingly, the UCL claim is dismissed.  As the Court has already ruled on this exact issue, and Plaintiffs did not amend to address the Court's ruling, the Court will not allow further opportunity to amend this claim.

### D. Accounting

Defendants next move to dismiss the accounting claim.  See MTD at 9.  The accounting claim in the SAC is the same as that previously dismissed in the FAC.  Compare FAC ¶¶ 99-102, SAC ¶¶ 104-07.  It relies on Plaintiffs' allegations that Defendant has "a contractual duty to ensure that funds collected from Plaintiffs for the purpose of advertising and promotions were in fact spent for advertising and promotions" and that Defendant "impermissibly prevented Plaintiffs [from] realizing the full gross sale of the $0.45 debit fee."  SAC ¶¶ 105-106.  The first basis the Court already dismissed as to the FAC, has not been adequately repled, and was abandoned as a basis for a breach of contract in Plaintiffs' Opposition brief.  The second basis the Court permitted to go forward at the last hearing, Lee Decl. Ex. A (Hearing Transcript) at 25.  The accounting claim stands and falls with the contract claim.  See Union Bank v. Superior Court, 31 Cal. App. 4th 573, 594-95 (1995).  Accordingly, the accounting claim survives as to the $0.45 fee and not as to the advertising and promotions fee.

### E. Remedies Sought

Finally, Defendant argues that the SAC seeks remedies not available as a matter of law.  MTD at 9-10.  Specifically these are: statutory penalties, SAC at 30, although private plaintiffs cannot recover statutory penalties under the UCL, see State v. Altus Fin., S.A., 36

10

1 Cal. 4th 1284, 1307 (2005); punitive damages, SAC at 30, although none of Plaintiffs' claims
2 support a punitive damages award, see City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43
3 Cal. 4th 375, 392 (2008) (breach of contract), Cates Constr., Inc. v. Talbot Partners, 21 Cal.
4 4th 28, 61 (1999) (implied covenant of good faith and fair dealing), Korea Supply Co. v.
5 Lockheed Martin Corp., 29 Cal. 4th 1134, 1148 (2003) (UCL); and attorneys' fees, SAC at
6 30, although Plaintiffs did not allege any contractual right to recover attorneys' fees, nor is
7 one available under the UCL, see Korea Supply Co., 29 Cal. 4th at 1148.

Plaintiffs do not dispute that such remedies are unavailable as a matter of law. See generally Opp'n (not addressing this argument). Accordingly, the Court dismisses them. See Rezner v. Beyerishe Hypo-Und Vereinsbank AG, No. 06-2064, 2011 WL 6329854, at *2 (N.D. Cal. Nov. 8, 2011) ("[W]hen a party contends that the type of damages sought in a complaint is unavailable as a matter of law, the appropriate vehicle for such an argument is either a Rule 12(b)(6) motion or a motion for partial summary judgment, rather than a motion to strike.") (citing Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010)).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss (dkt. 74) as to all claims but the breach of contract claim relating to the failure to deliver ARCO-brand gasoline. Plaintiffs have leave to amend within thirty days of this Order, only to (1) replead their implied covenant of good faith claim, if they can do so in good faith, and (2) add a claim for the implied warranty of fitness.

**IT IS SO ORDERED.**

Dated: February 21, 2012      CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE